**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSICA B.,[1] | |
|    Plaintiff, | No. 24cv10463 (EP) |
|    v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
|    Defendant. | |

**PADIN**, **District Judge.**

Plaintiff, who suffers from various physical impairments, appeals from the Social Security Administration's ("SSA") denial of disability insurance benefits ("DIB") pursuant to the Social Security Act (the "Act").[2] D.E. 1. For the reasons below, the Court will **GRANT** the appeal, **VACATE** the denial, and **REMAND** for further proceedings consistent with this Opinion.[3]

**I.     BACKGROUND**

    **A.     Plaintiff's DIB Application**

Plaintiff filed a protective DIB application on August 3, 2021, alleging disability beginning October 7, 2020 due to, among other things, post-COVID syndrome and morbid obesity. *See* R. 17.[4] The SSA initially denied the application on December 1, 2021, and again upon

---

[1] To protect the privacy interests of plaintiffs in social security cases, the Court adopts the recommendation of the Judicial Conference of the United States to refer to plaintiffs in social security cases by their first name and last initial. *Veronica D. v. Comm'r of Soc. Sec.*, No. 24-1326, 2025 WL 2665313, at *8 (M.D. Pa. Sept. 17, 2025).

[2] 42 U.S.C. § 401, *et seq*.

[3] The Court decides the appeal without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

[4] "R." denotes the administrative record. D.E. 4.

reconsideration on June 7, 2022.  *Id.*  After Plaintiff requested a hearing, Administrative Law Judge Ricardy Damille (herein, the "ALJ") conducted a hearing on May 23, 2023 (herein, the "Hearing").  *Id.*  On December 21, 2023, the ALJ denied Plaintiff's application.  *Id.* 14.

### B. The ALJ's Five-Step Sequential Evaluation Process

To qualify for DIB, a claimant must show that she is disabled within the meaning of the Act.  42 U.S.C. § 423(a)(1)(E).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  *Id.* § 423(d)(1)(A); *see Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001).  The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).  "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  *Id.*

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled.  20 C.F.R. § 404.1520(a)(4).  "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five."  *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.  This is not at issue here; the ALJ found that Plaintiff did not engage in substantial gainful

activity during the period from her alleged onset date of October 7, 2020, through her date last insured of September 30, 2023. R. 20.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three. Here, the ALJ found Plaintiff has the following severe impairments: post-COVID syndrome, asthma, obesity, anxiety, and autism. R. 20. Plaintiff's post-COVID syndromes include headaches, shortness of breath, fatigue and difficulty with concentration/slower processing. *Id.* 24. The ALJ noted that although Plaintiff was using an albuterol inhaler as needed to treat her pulmonary symptoms, Plaintiff reported that she continued to struggle with shortness of breath with exertion, energy, and fatigue. *Id.* A disability determination service ("DDS") found that Plaintiff had severe impairments involving the respiratory system as well as chronic fatigue syndrome. *Id.* 26.

At step three, the ALJ decides whether the plaintiff's impairments meet or equal the severity of an impairment in the Listing of Impairments found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, the plaintiff is presumed to be disabled if the impairment(s) has lasted or is expected to last for a continuous period of at least twelve months. *Id.* § 404.1509. Otherwise, the ALJ proceeds to step four. Here, the ALJ found that Plaintiff did not, for any of the conditions identified in step two, have a physical impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. R. 20-22.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step five. Here, the ALJ found that Plaintiff could not perform past relevant work, R. 29, and had the RFC to conduct:

> [S]edentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she must avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation. She is restricted to a work setting with a moderate noise level which is commensurate with an office type setting. She cannot tolerate light brighter than that found in a work environment such as an office or retail store. She is able to understand, remember and carry out simple instructions. She is restricted to work involving few workplace changes, occasional decision making and free of fast-paced production. Fast pace is defined as assembly line work. With respect to the essential functions of the job, she can have occasional interaction with supervisors, coworkers and the public.

*Id.* 22.

At step five, the ALJ must decide whether the plaintiff—considering the plaintiff's RFC, age, education, and work experience—can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). The step five determination is often accomplished through vocational expert ("VE") testimony. *Maria B. v. Kijakazi*, No. 21-20090, 2022 WL 17733680, at *2 (D.N.J. Dec. 16, 2022). VE testimony "typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). The ALJ will ask the VE whether, given the claimant's physical capability, the claimant can perform certain types of jobs listed in the Dictionary of Occupational Titles ("DOT").[5] *Maria B.*, 2022 WL 17733680, at *2. If the ALJ determines that the plaintiff can

---

[5] "The DOT is a 'publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy;' ALJs generally

4

perform jobs that exist in significant numbers in the national economy,[6] then the plaintiff is not disabled. 20 C.F.R. § 404.1520(g). Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months. *N.M. v. Comm'r of Soc. Sec.*, No. 23-1093, 2024 WL 1006288, at *2 (D.N.J. Mar. 8, 2024).

> At the Hearing, the ALJ asked the VE to:
>
> assume a person of the same age, education, and work experience as Plaintiff, who could perform sedentary work, except she must avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation; is restricted to a work setting with a moderate noise level which is commensurate with an office type setting; cannot tolerate light brighter than that found in a work environment such as an office or retail store; can understand, remember, and carry out simple instructions; is restricted to work involving few work place changes, occasional decision making and free of fast-paced production (defined as assembly line work); and can have occasional interaction with supervisors, coworkers and the public with respect to the essential functions of the job.

D.E. 9 ("Opposition" or "Opp'n") at 3 (citing R. 57-60). Assuming the above limitations, the VE testified that there were three jobs that exist in significant numbers in the national economy: (1) semiconductor bonder[7] (22,675 jobs); (2) table worker[8] (8,766 jobs); and (3)

---

consult the DOT to determine whether any jobs exist that a claimant can perform." *Socha v. Saul*, No. 18-10307, 2021 WL 1422887, at *4 n.4 (D.N.J. Apr. 15, 2021) (quoting *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002)).

[6] Both parties agree that SSR 24-3p, the new social security ruling that replaces SSR 00-4p, and which, among other things, addresses how VEs should estimate job numbers, does not apply to this action given the ALJ's decision predates SSR 24-3p's effective date. Br. at 6 n.1; Opp'n at 7 n.2.

[7] *DOT* 726.685-066, 1991 WL 679631.

[8] *DOT* 739.687-182, 1991 WL 680217.

telephone/switchboard operator (58,117 jobs).[9]  R. 59-60; *see also id.* 30.  Accordingly, the ALJ determined that Plaintiff was not disabled.  *Id.* 30-31.

## C. Plaintiff's Appeal

Plaintiff appealed the ALJ's decision to the SSA Appeals Council, which denied review on September 26, 2024.  *Id.* 1-6.  On November 13, 2024, Plaintiff filed this appeal.  D.E. 1.  Plaintiff's brief followed.  D.E. 7 ("Brief" or "Br.").  The Brief presents one issue for the Court:  whether there are unresolved conflicts between the VE testimony and the DOT regarding the two unskilled sedentary jobs (table worker and semiconductor bonder) that the ALJ found that Plaintiff could perform.  *Id.* at 1.  Defendant, the SSA Commissioner, opposes.  Opp'n.  Plaintiff replies.  D.E. 10 ("Reply").

---

[9] DOT 235.662-022, 1991 WL 672175.  The ALJ did not mention this job in his Opinion.  *See* R. 30-31.  Although the ALJ does not state it explicitly, based on the VE's testimony, the Court infers that the ALJ likely concluded that the job of telephone switchboard operator no longer exists in significant numbers in the national economy.  Either way, the Commissioner meets its step five burden when the ALJ identifies at least one occupation with a significant number of jobs in the national economy that the claimant can perform.  *See Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x. 254, 256 (3d Cir. 2014) (citing 20 C.F.R. §§ 404.1566(b), 416.966(b)).  Accordingly, the Court limits its inquiry to the jobs the ALJ—and not the VE—identified, and will not consider this job, as Defendant implicitly asks the Court to do.  *See* Opp'n at 4 n.1 & 15 n.5

Because SSR 24-3p does not apply to this matter, the DOT's outdated database was the likely source for the occupational data provided by the VE (the VE did not explicitly state the source of his data, nor did he testify as to his methodology of estimating the number of jobs that exist in the national economy for these jobs).  And although the SSA now recognizes the DOT is not the only reliable source of occupational data for claims brought after SSR 24-3p's effective date, the Court must still note that in actions like this one, the DOT can be a problematic source of occupational data, especially for many of the jobs that have been rendered obsolete since 1977.  *See Fernando P. v. Comm'r of Soc. Sec.*, No. 22-5578, 2023 WL 6121332, at *3 (D.N.J. Sept. 19, 2023); Lisa Rein, *Social Security denies disability benefits based on list with jobs from 1977*, Washington Post, Dec. 27, 2022, https://www.washingtonpost.com/politics/2022/12/27/social-security-job-titles-disabled-applicants-obsolete/ ("But after spending at least $250 million since 2012 to build a directory of 21st century jobs, an internal fact sheet shows, Social Security is not using it, leaving antiquated vocational rules in place to determine whether disabled claimants win or lose."); *see also Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010) (remanding to the Commissioner where the two DOT job categories relied on appeared to be obsolete).

## II.     LEGAL STANDARD

Judicial review of an SSA determination is based upon the pleadings and the transcript of the record.  The scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the ALJ's findings of fact.  *See* 42 U.S.C. § 405(g) ("The findings . . . as to any fact, *if supported by substantial evidence*, shall be conclusive."); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999) (district court has plenary review of all legal issues and reviews the ALJ's findings to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).  However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence."  *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

If faced with conflicting evidence in the Record, the Commissioner "must adequately explain . . . his reason for rejecting or discrediting competent evidence."  *Kirby v. Comm'r of Soc. Sec.*, No. 16-5159, 2017 WL 4330361, at *5 (D.N.J. Sept. 29, 2017) (citations omitted).  The Court must determine "whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision." *Dunster v. Dudek*, No. 24-469, 2025 WL 622333, at *4 (M.D. Pa. Feb. 26, 2025) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)).  An ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]."  *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Decisions with conclusory findings or which indicate the ALJ failed to consider

7

all the evidence are not supported by substantial evidence. *See id.* at 705-06. And the Court must also ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

### III.     REVIEW OF ALJ'S OPINION

Although the Commissioner bears the burden at step five of demonstrating that the claimant can perform jobs existing in the national economy, *see Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014), this burden is satisfied if the ALJ identifies at least one occupation with a significant number of jobs in the national economy that the claimant can perform. *See Wilkinson*, 558 F. App'x. at 256 (citing 20 C.F.R. §§ 404.1566(b), 416.966(b)).

Here, Plaintiff challenges the ALJ's determination that she could work as either a semiconductor bonder and/or table worker given inconsistencies and internal conflicts between the VE's testimony, the DOT, and the ALJ's findings. Br. at 4-12.

As noted above, "ALJs rely primarily on the DOT and VEs for information about requirements of work in the national economy." *Beers v. Colvin*, No. 12-2129, 2014 WL 241514, at *8 (M.D. Pa. Jan. 22, 2014) (citing SSR 00-4p). Nevertheless, an ALJ may not allow inconsistencies between a plaintiff's actual skills, VE testimony, and the criteria set forth in the DOT to go unaddressed and unresolved. *Sanchez v. Dudek*, No. 24-240, 2025 WL 924046, at *7 (M.D. Pa. Mar. 26, 2025) (citing *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014)). SSR 00-4p provides that a "VE's testimony and evidence regarding occupational information should be consistent with the occupational information contained in the DOT." *Knight v. Colvin*, No. 16-1816, 2018 WL 1400077, at *1 (W.D. Pa. Mar. 20, 2018). When there is an apparent unresolved conflict between the DOT and VE testimony, "the ALJ is required to elicit a reasonable explanation for the conflict before relying on the VE's evidence. If the ALJ finds the VE's explanation for the

8

conflict to be reasonable and provides a basis for doing so, the ALJ can rely on the VE's testimony." *Id.* (citing SSR 00-4p at *2-4).

As explained in more depth below, the Court finds that the ALJ failed to identify or explain conflicts between the VE's testimony and the DOT, and therefore, will **GRANT** Plaintiff's appeal.

### A. Table Worker

The VE testified—and the ALJ subsequently concluded—that Plaintiff could work as a table worker. R. 30-31, 60. As defined in the DOT, the table worker job involves "[e]xamin[ing] squares (tiles) of felt-based linoleum material passing along on conveyor and replac[ing] missing and substandard tiles." 1991 WL 680217. Plaintiff contends that the ALJ's finding that she could work as a table worker "presents an inconsistency between the ALJ's fashioned RFC and the DOT that neither the VE nor ALJ resolved" given she is restricted from performing fast-paced production work, including assembly line work. Br. at 7. The Court agrees.

As many courts in this Circuit have found, jobs like table worker—which require an individual to perform tasks along a conveyor belt—are clearly assembly line work. *See, e.g.*, *Abigail L. v. Kijakazi*, No. 21-2275, 2022 WL 16362468, at *13 (D.N.J. Oct. 27, 2022) ("[C]onveyor belt work conflicts with Plaintiff's restriction from tandem work on an assembly line.") (citing *Laura K. v. Kijakazi*, No. 20-2215, 2021 WL 4391123, at *6 (D. Md. Sept. 24, 2021) ("Th[e] task of looking at items on a conveyor belt and removing specific items conflicts with an RFC precluding fast paced, assembly line work.") (citation modified)); *see also Reed v. Saul*, No. 19-1826, 2021 WL 3121484, at *7 (M.D. Pa. Mar. 12, 2021), *report and recommendation adopted*, 2021 WL 3115190 (M.D. Pa. July 22, 2021) (where both the Court and the ALJ referred to

production rate pace as assembly-line work); *Maxwell v. Kijakazi*, No. 22-4465, 2023 WL 3674335, at *3 (E.D. Pa. May 25, 2023) (same).[10]

At the Hearing, the ALJ explicitly told the VE that assembly line work was not permitted. R. 56-57.[11] Therefore, "the testimony of the VE that an individual who could not perform production rate pace positions could perform . . . assembly line positions was inconsistent with the DOT." *Sanchez*, 2025 WL 924046, at *10. "If there is an apparent conflict between VE testimony and DOT information, the ALJ must receive a reasonable explanation for the discrepancy." *Beers*, 2014 WL 241514, at *8 (citations omitted). Here, despite being required to do so, the ALJ failed to identify this inconsistency, address the inconsistency with the VE, or resolve it in his decision. *Sanchez*, 2025 WL 924046, at *10. Accordingly, the Court concludes that there is not substantial evidence to support the ALJ's finding that Plaintiff could work as a table worker. *See Cotter*, 642 F.2d at 705-06.

---

[10] In a footnote, Defendant cites to several cases that support its contention that there is no apparent conflict between the RFC and the table worker position based on the presence of a conveyor belt in the job description. Opp'n at 8 (citations omitted).

The Court is not persuaded by Defendant's arguments for two reasons. *First*, because Defendant exclusively relies on out-of-circuit district court cases, which, as Defendant notes later in the Opposition in a different context, have no binding effect on this Court. *See* Opp'n 9-10. Instead of relying on these out-of-circuit cases, this Court will follow the several in-circuit district court cases that have consistently found a conflict where a plaintiff is restricted from assembly line work yet is determined to be able to work in a job that includes a conveyor belt. *Second*, unlike in other cases where the Court has been required to make the logical jump between fast-paced production work and work on a conveyor belt, *see e.g.*, *Sanchez*, 2025 WL 924046, at *10, here, the ALJ explicitly excluded assembly line work, *see* R. 56-57. Thus, the Court agrees with Plaintiff that "Defendant's argument regarding the table worker job fails because the ALJ specifically precluded work involving assembly lines." Reply at 2.

[11] Specifically, the ALJ stated in his hypothetical to the VE that the work environment must be "free of fast-paced production. Fast pace here is defined as assembly line work, so no assembly line work." R. 57.

10

B.     **Semiconductor Bonder**

As Defendant notes, even if the Court finds an inconsistency with respect to the table worker position, Plaintiff cannot prevail so long as the ALJ identifies at least one occupation with a significant number of jobs in the national economy that Plaintiff can perform. Opp'n at 7-9; *see also Sayers v. Kijakazi*, No. 22-117, 2023 WL 5672742, at *1 (W.D. Pa. Aug. 31, 2023).

Plaintiff raises several challenges to the ALJ's finding that she can work as a semiconductor bonder. One involves the apparent failure of the ALJ to identify or address a discrepancy in the VE's testimony that Plaintiff could work as a semiconductor bonder despite the fact Plaintiff "cannot tolerate light brighter than that found in a work environment such as in an office or a retail store." R. 58; Br. at 9-11.

The semiconductor bonder job involves the following:

> Tends automatic bonding machine that bonds gold or aluminum wire to integrated circuit dies to connect circuitry to package leads: Reviews schematic diagram or work order to determine bonding specifications. Turns dials to set bonding machine temperature controls and to regulate wire feeding mechanism. Mounts spool of wire onto holder and inserts wire end through guides, using tweezers. Positions semiconductor package into magazine of automatic feed mechanism, and observes package, using microscope or equipment display screen, to ensure connections to be bonded are aligned with bonding wire. Adjusts alignment as necessary. Activates machine that automatically bonds wire to specified connections on semiconductor package leads. Removes packages from bonding machine and places packages in work tray. May test tensile strength of bonded connections, using testing equipment. May locate connections and bond wire to connect circuitry of hybrid circuits, using precision-bonding machine.

*DOT* 726.685-066, 1991 WL 679631.

The DOT is silent as to the lighting conditions for the semiconductor bonder job. *See id*. At the Hearing, the VE testified that the *form perception* in this job is limited. R. 60.

The DOT's silence on an issue does not automatically create a conflict. *See Feeley v. Comm'r of Soc. Sec.*, No. 20-1311, 2021 WL 4473152, at *4 (D.N.J. Sept. 30, 2021). Nevertheless,

11

Plaintiff maintains that the VE's response regarding form perception was "unresponsive/off-topic" to the question asked by the ALJ regarding her lighting limitation because form perception is distinct from whether the job involves bright lights, the latter of which is at issue due to Plaintiff's migraines. Br. 10-11. Thus, she argues, there exists a conflict between the hypothetical posed by the ALJ and the VE's testimony.

The Court agrees with Plaintiff. As Plaintiff explains, form perception "relates to the ability to perceive pertinent detail in objects or in pictorial or graphic material." Reply at 7; *see also Podedworny*, 745 F.2d at 219 (describing form perception as a skill/aptitude); *Tackett v. Heckler*, No. 82-366, 1983 WL 44231, at *10 (S.D. Ohio June 16, 1983) (grouping form perception in a list of transferable vocational skills including eye-hand coordination, manual and finger dexterity, and spatial ability). The VE's testimony that the semiconductor bonder job has low form perception speaks to whether the job requires a certain *skill*, not whether the role would expose Plaintiff to bright lights, nor, in turn, whether an individual with a lighting limitation like Plaintiff's can perform the role. Accordingly, the Court concludes that the VE's testimony that Plaintiff can perform the semiconductor bonding job was incomplete, and the ALJ's reliance on this testimony was improper. Moreover, the ALJ failed to identify this error or correct it in his decision.

In response to Plaintiff's argument, Defendant avers that Plaintiff is impermissibly attempting to supplant her lay testimony for the VE's testimony at the Hearing. Opp'n at 14-15 n.4 (citations omitted). The Court disagrees with Defendant's characterization of Plaintiff's argument. Plaintiff is not, for instance, claiming that the VE's testimony that the semiconductor bonder job requires low form perception is incorrect, or that Plaintiff has a different aptitude for form perception than was otherwise determined by the ALJ; instead, Plaintiff is asserting that the VE's testimony that someone who has limited form perception can perform the semiconductor

bonding job does not address the pertinent questions of whether someone working in the role would be exposed to bright lights and whether this job runs afoul of the lighting limitation posed by the ALJ in his hypothetical questions at the Hearing.[12]  As noted above, the Court agrees with Plaintiff that the VE's testimony does not squarely address the hypothetical lighting limitation posed by the ALJ.  The VE also failed to explain why the fact the role requires low form perception means that Plaintiff would not be subjected to bright lights on the job.

Given the Court's findings that (1) the VE's testimony regarding form perception fails to address whether the semiconductor bonder position can be performed by someone with Plaintiff's lighting limitation and (2) the ALJ failed to identify or explain this discrepancy, the Court has no choice but to conclude that the ALJ's determination that Plaintiff can work as a semiconductor bonder is not supported by substantial evidence.  Accordingly, the Court will **GRANT** Plaintiff's appeal.

## IV.     CONCLUSION

For the reasons above, Plaintiff's appeal will be **GRANTED**, the ALJ's denial of benefits will be **VACATED**, and the matter will be **REMANDED** to the SSA for further proceedings consistent with this Opinion.  An appropriate Order follows.

Dated:     December 28, 2025

/s/ Evelyn Padin
Evelyn Padin, U.S.D.J.

---

[12] Although Plaintiff has not improperly speculated with respect to her form perception argument, the Court agrees with Defendant that Plaintiff has improperly cited to YouTube videos to demonstrate that the semiconductor bonder position requires exposure to bright lights.  Opp'n at 14 (noting that the SSA can take administrative notice of job data from certain government publications and can use vocational experts or specialists) (citing 20 C.F.R. §§ 404.1566(d), (e), 416.966(d), (e)).